Benjamin Gubernick (SBN 321883)
**GUBERNICK LAW P.L.L.C.**
10720 W. Indian School Rd.,
Suite 19, PMB 12
Phoenix, AZ 85037
623-252-6961
ben@gubernicklaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN COLLYER, an individual;<br><br>Plaintiff,<br><br>v.<br><br>CATALINA SNACKS INC., a Delaware Corporation;<br><br>Defendant. | CASE NO.:<br><br>**COMPLAINT**<br><br>[CLASS ACTION]<br><br>1. Violation of California's Unfair Competition Law;<br>2. Violation of California's Consumers Legal Remedies Act;<br>3. Violation of California's False Advertising law;<br>4. Violation of California's Implied Warranty of Merchantability.<br><br>(Jury Trial Demanded) |

Karen Collyer ("Plaintiff") through undersigned counsel, on behalf of herself and all others similarly situated, brings this Class Action Complaint against Catalina Snacks Inc. ("Defendant" or "Catalina Snacks") and alleges upon personal knowledge as to her own actions, and upon information and belief and counsel's investigation and all other matters, as follows:

## NATURE OF ACTION

1. This case seeks recovery for consumers who overpaid for misleadingly labeled Catalina Snacks products.

2. Catalina Snacks manufactures "keto friendly" cereals that are sold under the brand name "Catalina Crunch" at grocery stores throughout California and online to California consumers. Catalina Crunch cereals come in varieties including "Chocolate Banana", "Honey Graham", "Mint Chocolate", and "Apple Cider Donut" (collectively, the "Products").

3. The labels on the Products lure in California consumers who wish to purchase foods made from actual fruits and premium ingredients. However, as described below, the Products do not contain the promised ingredients. The Chocolate Banana contains no banana, the Apple Cider Donut contains no apple, the Honey Graham contains no honey, and the Mint Chocolate does not have mint.

4. Defendant's actions are misleading and in direct violation of California law. Plaintiff and all other similarly situated California consumers are entitled to damages and all other remedies the Court deems appropriate.

## PARTIES

5. Plaintiff Karen Collyer ("Plaintiff") is an individual who, at all relevant times, has resided in Monterrey County, California.

6. Defendant Catalina Snacks Inc. is a Delaware corporation. Its principal place of business is 6101 North Keystone, Suite 100 #1104, Indianapolis, Indiana, 46220, USA.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction pursuant to the Class Action Fairness Act, 23 U.S.C. § 1332(d), because: (1) there are at least one hundred members of the proposed class; (2) the aggregated claims of the individual Class Members exceed the sum value of $5,000,000 exclusive of interest and costs; and (3) Defendant and more than two-thirds of the proposed class are citizens of different states.

8. The Court has personal jurisdiction over Defendant because Defendant has sufficient minimal contacts with the State of California and has intentionally availed itself of stores and markets in the State of California such as to make the exercise of jurisdiction by this Court permissible under traditional standards of fair play and substantial justice.

9. Venue is proper in this district because Plaintiff resides in the Northern District of California and purchased the subject products in the Northern District of California.

10. In accordance with California Civil Code Section 1780(d), Plaintiff concurrently files an affidavit establishing that, at various times throughout the class period, she purchased the products at issue in this case at retail stores in this District. Plaintiff's affidavit is attached as Exhibit A.

## DIVISIONAL ASSIGNMENT

11. Pursuant to Civil Local Rule 3-2(c-d), this action should be assigned to the San Jose Division, as a substantial part of the events giving rise to the claims arose in Monterrey County.

## GENERAL ALLEGATIONS

### Consumers demand real ingredients as opposed to "natural flavor."

12. Consumers are increasingly willing to pay a premium to purchase foods that contain real fruits and vegetables. Such ingredients are perceived as healthful, in stark contrast to products that merely attempt simulate their presence using "natural flavor", a term defined by the Food and Drug Administration ("FDA") as:

> [E]ssential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional.[1]

For nonorganic foods, "dozens of other ingredients like preservatives and solvents … can go into a so-called natural flavor. … While food processors must list all of the ingredients on a food label, flavor manufacturers do not have to disclose their ingredients. They can add synthetic solvents, preservatives,

---

[1] 21 C.F.R. § 101.22(a)(3).

3
COMPLAINT (CLASS ACTION)

emulsifiers, carriers and other additives to a flavor that qualifies as natural under current regulations."[2]

13. Natural flavor is used to flavor food to create enhanced flavor and addictive foods.[3] Natural flavors are made by scientists, who extract chemicals responsible for a flavor from a natural source.[4] Natural flavors can be highly processed and be comprised of chemical additives.[5]

14. Indeed, "[o]n an ingredient label, 'natural flavor' can be a sort of black box, enclosing dozens of components, including flavor chemicals, flavor modifiers, and solvents, none of which have to be individually disclosed. Many companies will use additives like propylene glycol when they can disguise them under the benign sounding catchall 'natural flavors'—even if they would reject them as individually listed ingredients."[6]

15. Unsurprisingly then, "lab-created artificial and natural flavors are not in demand; consumers want real ingredients from nature."[7]

**The statutory scheme governing food labeling.**

16. The federal government and California legislatures recognize that consumers rely on the front label of food packaging to understand the nutritional value of a product and to make educated purchasing decisions. These regulatory schemes have been enacted to prevent unscrupulous market participants from passing off their products as something they are not. A manufacturer's compliance with food labeling laws is imperative to prevent consumers from being deceived or misled.

17. The Federal Food, Drug, and Cosmetic Act ("FDCA") "promote[s] honesty and fair

---

[2] *Are 'Natural Flavors' Really Natural?*, The New York Times, Feb. 1, 2019, available at https://www.nytimes.com/2019/02/01/well/eat/are-natural-flavors-really-natural.html.

[3] *Is There Really Anything Natural About Natural Flavors?*, Journal of Health & Biomedical Law, April 4, 2019, available at https://sites.suffolk.edu/jhbl/2019/04/04/is-there-really-anything-natural-about-natural-flavors/.

[4] *Is 'Natural Flavor' Healthier Than 'Artificial Flavor'?* NPR, November 3, 2017, available at https://www.npr.org/sections/thesalt/2017/11/03/560048780/is-natural-flavor-healthier-than-artificial-flavor.

[5] Food Revolution Network, October 25, 2019, available at https://foodrevolution.org/blog/natural-flavors/.

[6] *Clean label's dirty little secret*, The Counter, February 1, 2018, available at https://thecounter.org/clean-label-dirty-little-secret/.

[7] *Top Trends Driving Change In The Food Industry*, Forbes, February 16, 2019, available at https://www.forbes.com/sites/juliabolayanju/2019/02/16/top-trendsdriving-change-in-the-food-industry/?sh=302c9e636063.

dealing in the interest of consumers[.]"[8]

18. California has adopted the FDCA in the Sherman Food, Drug, and Cosmetic Law ("Sherman Law").[9]

19. Misbranded foods are prohibited to enter interstate commerce under the FDCA.[10]

20. A food is misbranded if its label is "false or misleading".[11]

21. The FDCA lists specific rules governing the content of food labels. Pursuant to the authority granted by the FDCA, the FDA promulgated regulations that apply to the labeling of food.

22. The front label of a food product (the "principal display panel") must comply with federal and California food labeling laws when natural flavor is used as the primary flavoring agent to give a food its characterizing flavor as depicted by words or vignette on the principal display panel.

23. As required by the FDA:

(i) If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor and shall be declared in the following way:

(1) If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla", in letters not less than one-half the height of the letters used in the name of the food, except that:

(i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake".

(ii) If none of the natural flavor used in the food is derived from the product whose flavor is simulated, the food in which the flavor is used shall be labeled either with the flavor of the product from which the flavor is derived or as "artificially

---

[8] 21 U.S.C. § 341.
[9] Cal. Health & Safety Code § 110100 (a) ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state.").
[10] 21 U.S.C. § 331.
[11] 21 U.S.C. § 343(a).

flavored."

(iii) If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.[12]

24. The FDA has stated that compliance with labeling regulations is necessary to prevent consumer deception. Thus:

[Although] it is not possible to set out all the circumstances under which a flavor representation is or is not implied[,] [a]ny use of a vignette showing a fruit or vegetable clearly constitutes such a representation…. [and] use of a specific fruit flavor in the food name, such as 'orange soda,' does constitute such a representation and requires compliance with §1.12(i).[13]

25. The FDA has also stated that where flavor representations are made on the principal display panel "it is necessary to establish a uniform system of flavor designation to dispel any confusion or misrepresentation."[14] That is because "*[t]he difference between a product that contains a characterizing food ingredient and a product that contains no such ingredient … is not at all subtle, and is very important to the value of the product and thus to the consuming public*."[15]

**Defendant Catalina Snacks.**

26. Catalina Snacks develops, markets, sells, and distributes "keto friendly" cereals, cookies, and snacks. According to its website, Catalina Snacks has "[c]ombin[ed] nutritional science with culinary arts" to "create[] delicious, healthier products that help you achieve a better life."[16] The website further claims that "[e]ach one" of the company's products is "made with protein, fiber, good fats, *real ingredients*, and very little to no sugar." [17]

27. The purported benefits of Defendant's products do not come cheap. Consumers can expect

---

[12] 21 C.F.R. § 101.22(i)(1)(i)-(iii).

[13] 38 Fed. Reg. 33285 (December 3, 1973).

[14] *Id*. at 33286.

[15] *Id*. at 33285 (emphasis added).

[16] Catalina Crunch, About, available at https://us.catalinacrunch.com/pages/about-us (last accessed January 18, 2023).

[17] Catalina Crunch, About, "Our Mission" available at https://us.catalinacrunch.com/pages/about-us (last accessed January 18, 2023).

to pay around $7 to $10 for a nine ounce bag of Catalina Crunch cereal.

28. Defendant operates in a crowded space. Catalina Crunch cereals compete directly with brands including WonderWorks Keto Friendly Cereal, Simple Truth Keto, HighKey Low Carb Keto Cereal, and NuTrail Keto Granola.

29. Despite the plethora of competing products on grocery store shelves, Defendant has managed to sell over 11 million bags of cereal.[18] As explained below, Defendant owes at least some of that success to its willingness to flout the laws that its competitors abide by.

**Catalina Snacks Misleading Packaging.**

30. Four varieties of Catalina Crunch cereal are "Chocolate Banana", "Honey Graham", "Mint Chocolate" and "Apple Cider Donut", all of which come in similar packaging and utilize substantially similar misrepresentations to induce consumer overpayment.

31. As displayed on Defendant's website, the front side packaging of the "Chocolate Banana" cereal is color-coordinated in brown and yellow.[19] The front packaging showcases pictures of real banana slices and states "Chocolate Banana" in prominent lettering.



---

[18] Catalina Crunch, About, "Our Mission" available at https://us.catalinacrunch.com/pages/about-us (last accessed January 18, 2023) (declaring "11 Million Pouches Of Cereal Sold In 2021").

[19] Catalina Crunch available at https://us.catalinacrunch.com/products/cereal/product-handle?variant=42528015974622 (last accessed January 19, 2023).

32. The "Chocolate Banana" cereal indicates its characterizing flavors as chocolate and banana by name, vignette, and packaging color scheme. But contrary to Defendant's representations on the label, the "Chocolate Banana" cereal contains no banana.

33. The backside packaging of the "Chocolate Banana" cereal lists its ingredients, none of which contain banana. Instead, the product's banana taste appears to come from "natural flavors[.]"[20]



34. Similarly, the "Apple Cider Donut" variety contains no apple or apple cider. Instead, it contains natural flavors.[21]



---

[20] *Id*.

[21] Catalina Crunch available at https://us.catalinacrunch.com/products/apple-cider-donut-cereal (last accessed January 16, 2023).

35. Likewise, the "Mint Chocolate" variety has no mint, but rather natural flavors.[22]



36. And finally, the "Honey Graham" variety lacks honey. Again, only "natural flavors" are mentioned in the ingredients list.[23]



37. All four of the absent characterizing ingredients listed above—bananas, mint, honey, and apples—are premium ingredients and are substantially more expensive than the laboratory-created

---

[22] Catalina Crunch, Mint Chocolate 8-Pack, available at https://us.catalinacrunch.com/products/single-serve-cereal?variant=42874622116062 (last accessed January 19, 2023).

[23] Catalina Crunch, Cereal, available at https://us.catalinacrunch.com/products/cereal?variant=42528015876318 (last accessed January 19, 2023).

"natural flavors" included in the Products.

38. The absent characterizing ingredients are also commonly perceived by consumers as healthful. Bananas are known as "an excellent choice for anyone interested in eating healthy."[24] Honey offers cardiovascular, gastrointestinal, and neurologic benefits.[25] Mint is rich in nutrients and "is also a potent source of antioxidants, especially when compared to other herbs and spices."[26] Likewise apples and apple cider offer "amazing health benefits."[27] A reasonable consumers looking at the Products' principal display panel would believe that the Products contain these premium, healthful ingredients.

39. The uniform labeling system imposed by the FDA has been in place for decades, and almost all products on grocery store shelves comply with it. The consuming public is familiar with viewing, and differentiating, food products based on the product's principal display panel. The reasonable consumer understands that a food product marked "flavored" refers to the flavor of the food. Likewise, when the word "flavored" is not present, reasonable consumers believe that the ingredients referred to on the principal display panel are contained in the product.

40. Defendant's misbranded cereals deceive and mislead reasonable consumers, who pay a price premium for the Products, under the belief that the characterizing ingredients depicted on the principal display panel are contained in the cereal.

41. If consumers knew the truth about the Products, they would either purchase a different product, or only be willing to pay substantially less.

**Competing cereals.**

42. Defendant competes with other keto friendly cereals. Unlike the Products, however, competing cereals have front labels that contain accurate information about the product's ingredients.

---

[24] *11 Evidence-Based Health Benefits of Bananas*, Healthline, October 29, 2021, available at https://www.healthline.com/nutrition/11-proven-benefits-of-bananas.

[25] *Honey*, May Clinic, available at https://www.mayoclinic.org/drugs-supplements-honey/art-20363819#:~:text=Studies%20suggest%20that%20honey%20might,wound%20healing%2C%20particularly%20in%20burns.

[26] *8 Health Benefits of Mint*, Healthline, December 13, 2017, available at https://www.healthline.com/nutrition/mint-benefits#TOC_TITLE_HDR_2.

[27] *Apple Cider: Are There Health Benefits?*, WebMD, available at https://www.webmd.com/diet/health-benefits-apple-cider.

43. By way of example, the "Chocolate" WonderWorks Keto Friendly Cereal accurately states that the cereal is flavored, and the "Peanut Butter" variety contains the characterizing ingredient as depicted on the box, so no flavoring language is required on the front label.





44. Defendant also competes with Simple Truth Keto cereals. Simple Truth Keto cereals are sold in varieties such as "Blueberry Naturally Flavored" and "Cinnamon Naturally Flavored" thus alerting consumers to the fact that they do not contain actual blueberries or cinnamon. Unlike the Products, Simple Truth Keto cereals properly inform consumers that its cereals are "naturally flavored".




45. Defendant recognizes that consumers make decisions on which product to purchase based on the front label of a food. Defendant misleads and deceives consumers by failing to denote which of its cereals are flavored, and by doing so gains an unfair competitive advantage over competing products adjacent to Catalina Crunch on grocery store shelves.

46. Defendant's conduct is especially egregious because Defendant is fully aware of its obligations under federal and California labeling laws, and willfully chooses to ignore them. On December 6, 2021, Defendant was sued in the Central District of California for failing to include cinnamon in "Cinnamon Toast" Catalina Crunch cereal. *Majak v. Catalina Snacks*, No. 2:21-cv-09445-SB-MAR (C.D. Cal. Dec. 6, 2021). The plaintiff's alleged a violation under California's Unfair Competition Law's "unlawful" prong, based on Defendant's failure to comply with the Sherman Law and FDCA. The case was voluntarily dismissed several months later.

47. Since the filing of the 2021 case, Defendant not only continued to sell misbranded cereal, but also launched a new variety—the Apple Cider Donut—that failed to comply with the Sherman Law

1  and FDCA.

2  48.  Notably, after Plaintiff sent a written demand to Catalina Snacks in December of 2022, new varieties of Defendant's cereals started appearing on shelves, such as "Honey Graham Flavored Cereal" and "Mint Chocolate Flavored Cereal":

 

**Plaintiff Karen Collyer.**

49.  During 2022, Plaintiff purchased the Chocolate Banana and Honey Graham varieties of Catalina Crunch cereal at grocery stores in Monterey County, California.

50.  At the time of the purchases, Plaintiff believed that Defendant's representations on the front label were true. She believed that she was purchasing cereals that contained the fruits and the premium ingredients represented on the package by name, vignette, and color scheme.

51.  Plaintiff was misled and deceived by Defendant's labeling of its cereals.

52.  Plaintiff would not have purchased the Defendant's cereals, or only been willing to pay less, had she known the truth about Defendant's cereals.

53.  Plaintiff was injured in fact and lost money because of Defendant's conduct.

**CLASS ALLEGATIONS**

54.  Plaintiff brings this action on behalf of herself and all others similarly situated as a class

action pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks to represent the following class of persons:

**The Class**: All persons in California who, during the Class Period, purchased the Products. The Class Period starts at the earliest date allowed under the applicable statute of limitations and continues to the date of judgment.

55. Specifically excluded from the Class are: (a) any officers, directors or employees of Defendant; (b) any judge assigned to hear this case (or spouse or immediate family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; and (e) any attorneys of record and their employees.

56. Plaintiff reserves the right to amend or modify the class definition with greater specificity, by further division into subclasses, or by limitation to particular issues.

57. **Numerosity**. Class members are so numerous that joinder of each individual class member would be impracticable and unfeasible, and the disposition of their claims as a class will benefit the parties, the Court, and the interests of justice.

58. **Ascertainability**. The proposed Class is ascertainable from objective criteria.

59. **Commonality and Predominance**. There is a well-defined community of interest among the Class's members and common questions of law and fact predominate over questions affecting individual members. These common questions include whether: (1) the Product's labeling violated California's Sherman Act; (2) whether the Product's labeling would mislead a reasonable person; and (3) whether the Products conform to the promises or affirmations of fact made on the label.

60. **Typicality**. Plaintiff's claims are typical of those of all Class members in that they arise out of the same course of conduct by Defendant and enable her to seek the same relief under the same theories of recovery. The effort Plaintiff undertakes to pursue her claims will significantly benefit Class members because of the identical nature of the issues across the Class.

61. **Adequacy of Representation**. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff shares a common interest with Class members. Plaintiff has suffered an injury-in-fact because of Defendant's conduct. Plaintiff has retained counsel who are competent and experienced in complex class action litigation, and have the financial and other resources

necessary to vigorously prosecute this matter. Plaintiff and her counsel will prosecute this action vigorously and faithfully for the benefit of the Class. Plaintiff has no interests contrary to the Class and will fairly and adequately protect the interests of the Class.

62. **Community of Interest.** The proposed Class has a well-defined community of interest in the questions of fact and law to be litigated. These common questions of law and fact predominate. The named Plaintiff's claims are typical of those of Class members.

63. **Superiority**. Class certification is superior to the litigation of a multitude of cases. Class adjudication will conserve judicial resources and avoid the possibility of inconsistent rulings. Moreover, there are members of the Class who are unlikely to join or bring an action due to, among other reasons, their reluctance to spend large sums of time and money to recover a relatively modest individual recovery. Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among Class members in relation to the benefits received. The damages and other potential recovery for each individual member of the Class are modest relative to the burden and expense of individual prosecution of these claims. Few, if any, Class members could or would seek legal redress individually. Even if the members of the Class could afford individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

64. In the alternative, the above-referenced Class may be certified because:

(a) The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members' claims which would establish incompatible standards of conduct for Defendant;

(b) The prosecution of separate actions by individual members of the Class would create a risk of adjudications which would as a practical matter be dispositive of the interests of other members of the Class who are not parties to the adjudications, or which would substantially impair or impede the ability of other members to protect their interests.

**FIRST CAUSE OF ACTION**
**Violation of the Unfair Competition Law ("UCL")**
**(Cal. Bus. & Prof Code §§ 17200, et seq.)**
**(Class Claim)**

65. Plaintiff incorporates all preceding and succeeding allegations as if fully set forth in this paragraph.

66. Defendant has violated and continues to violate California's UCL (Cal. Bus. & Prof. Code § 17200, *et seq.*), which prohibits unlawful, unfair, and fraudulent business acts or practices.

67. Defendant's business acts and practices are unlawful in that they violate: (1) the Consumers Legal Remedies Act, Cal. Civil Code § 1750, *et seq.* for the reasons set forth below; (2) the False Advertising Law, Cal. Bus. Prof. Code § 1750, *et seq.* for the reasons set forth below; (3) the advertising provisions of the Sherman Law (Article 3), including California Health & Safety Code §§ 110390, 110395 and 110400; (4) the misbranded food provisions of the Sherman Law (Article 6), including California Health & Safety Code §§ 110660, 110665, 110705, 110740, 1100760 110765, and 110770; and (5) FDA regulations incorporated into the Sherman Law, including 21 C.F.R. 101.3, 101.4, 101.13, 101.14, and 101.22.

68. Defendant's acts also constitute fraudulent practices in that they are likely to deceive a reasonable consumer. In particular, Defendant misrepresents that the Products contain fruits or premium ingredients that they do not have.

69. Defendant's conduct also constitutes unfair business practices in that, by mislabeling the Products, Defendant gains an unearned competitive advantage over products that do not misrepresent the ingredients they contain.

70. As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Class suffered a foreseeable injury-in-fact, in that they either would not have purchased the Products or would have only been willing to pay significantly less.

71. Plaintiffs and Class members are entitled to equitable relief, including an order requiring Defendant to pay restitution to Plaintiff and the Class of amounts obtained because of its unfair, deceptive, and fraudulent practice.

**SECOND CAUSE OF ACTION**
**Violation of the Consumers Legal Remedies Act ("CLRA")**
**(Cal. Civ. Code § 1750, *et seq*.)**
**(Class Claim)**

72. Plaintiff incorporates all preceding and succeeding allegations as if fully set forth in this paragraph.

73. Defendant is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770 and has provided "goods" within the meaning of Cal. Civ. Code §§ 1761 (b) and 1770.

74. Plaintiff and members of the Class are "consumers" within the meaning of Cal. Civ. Code §§ 1761(d) and 1770 and have engaged in a "transaction" within the meaning of Cal. Civ. Code §§ 1761 and 1770.

75. Through its false representations about the ingredients contained in the Products, Defendant has violated at least the following CLRA provisions:

   a. Defendant has made improper representations related to the source, sponsorship, approval, or certification of the Products, in violation of Cal. Civil Code § 1770(a)(2);

   b. Defendant has made improper representations related to the sponsorship, approval, characteristics, ingredients, uses, benefits or quantities which they do not have, in violation of Cal. Civil Code § 1770(a)(5);

   c. Defendant has improperly represented that its goods are of a particular standard, quality, or grade, when they are not, in violation of Cal. Civil Code § 1770(a)(7);

   d. Defendant have advertised the Products with intent to not sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9).

76. On December 6, 2022, Defendant received a letter that complied with Section 1782(d) of the CLRA, which was prepared by Plaintiff's counsel on behalf of Plaintiff and the Class. Copies of the letter were also sent via certified mail, return receipt requested, to the stores where the transactions occurred. The letter gave Defendant notice of the allegations in this Complaint. Defendant failed to take corrective action. As a result, Plaintiff requests monetary damages and all other applicable relief available under the CLRA.

77. Plaintiff also requests that the Court award her costs and reasonable attorney's fees.

78. A CLRA affidavit signed by Karen Collyer is attached as Exhibit A.

**THIRD CAUSE OF ACTION**
**Violation of the False Advertising Law ("FAL")**
**(Cal. Bus. & Prof. Code §§ 17500, *et seq*.)**
**(Class Claim)**

79. Plaintiff incorporates all preceding and succeeding allegations as if fully set forth in this paragraph.

80. The FAL, codified at Cal. Bus. & Prof. Code section 17500, *et seq*., prohibits "unfair, deceptive, untrue or misleading advertising[.]"

81. Defendant violated the FAL by making representations and statements (by commission and omission) that led reasonable consumers to believe that the Products contained ingredients they did not have.

82. In making and disseminating the representations alleged in this Complaint, Defendant knew or should have known that the representations were untrue or misleading.

83. Defendant's misrepresentations were specifically designed to induce reasonable consumers, like Plaintiff and Class members, to purchase the Products.

84. As a foreseeable and proximate result of Defendant's deceptive advertising, Plaintiff and Class members were duped into purchasing or overpaying for the Products.

85. Plaintiff and Class members are entitled to all damages available under the FAL, including punitive damages, as well as reasonable attorney's fees and costs of suit.

**FOURTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**(Class Claim)**

86. Plaintiff incorporates all preceding and succeeding allegations as if fully set forth in this paragraph.

87. By advertising and selling the Products at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and label.

88. As alleged in this Complaint, the Products do not conform to the promises or affirmation of fact made on the label. Accordingly, Defendant has breached the implied warranty of merchantability.

*See* Cal. Com. Code § 2314(2)(f).

89. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the Class have been denied the benefit of the bargain and have suffered damages in the form of overpayment. Accordingly, Plaintiff seeks damages, restitution, or disgorgement of ill-gotten gains to compensate Plaintiff and the Class.

90. On December 6, 2022, Defendant received a letter prepared by Plaintiff's counsel notifying Defendant of its breach of implied warranty. Defendant has not addressed the issues which gave rise to this Complaint.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all other similarly aggrieved persons, pray for judgment against Defendant as follows:

1. For an order certifying this matter as a class action and appointing Plaintiff and her undersigned counsel to represent the Class in this litigation;
2. A judgment requiring Defendant to pay damages as required by law, as well as reasonable attorneys' fees and costs of suit;
3. Such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted,

Date: January 20, 2023

By: _____
Benjamin Gubernick (SBN 321883)
**GUBERNICK LAW P.L.L.C.**
10720 W. Indian School Rd.,
Suite 19, PMB 12
Phoenix, AZ 85037
623-252-6961
ben@gubernicklaw.com