AMIN TALATI WASSERMAN, LLP
William P. Cole, Bar No. 186772
Matthew R. Orr, Bar No. 211097
Richard L. Hyde, Bar No. 286023
515 South Flower St., 18th Floor
Los Angeles, CA  90071
Tel:	(213) 933-2330
Fax:	(312) 884-7352
william@amintalati.com
matt@amintalati.com
richard@amintalati.com

Attorneys for Defendant Catalina Snacks Inc.,

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KAREN COLLYER, individual,<br><br>Plaintiff,<br><br>v.<br><br>CATALINA SNACKS INC.,<br><br>Defendant. | Case No.:  4:23-cv-00296-AMO<br><br>**DEFENDANT'S STATEMENT OF RECENT DECISION**<br><br>Hon. Araceli Martínez-Olguín |

Pursuant to Local Rule 7.3(d)(2), and in support of Defendant's Motion to Dismiss (ECF No. 16), Defendant respectfully submits the following relevant judicial opinion published after Defendant's reply was filed with the Court: *McGinity v. Proctor & Gamble Company*, --- F.4th ---, No. 22-15080, 2023 WL 3911531 (9th Cir. June 9, 2023). A copy is attached hereto as Exhibit A.

Dated:  June 14, 2023                    AMIN TALATI WASSERMAN, LLP
                                         William P. Cole
                                         Matthew R. Orr
                                         Richard L. Hyde

                                         /s/ *William P. Cole*
                                         William P. Cole

                                         Attorneys for Defendant Catalina Snacks Inc.

# **CERTIFICATE OF SERVICE**

(United States District Court)

I hereby certify that on the 14th day of June, 2023, I caused the electronic filing of the foregoing document, through the CM/ECF system. The aforementioned document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/ *William P. Cole*
William P. Cole

# Exhibit A

2023 WL 3911531
Only the Westlaw citation is currently available.
United States Court of Appeals, Ninth Circuit.

Sean MCGINITY, Plaintiff-Appellant,
v.
The PROCTER & GAMBLE
COMPANY, Defendant-Appellee.

No. 22-15080
|
Argued and Submitted March 29,
2023 San Francisco, California
|
Filed June 9, 2023

**Synopsis**
**Background:** Consumer brought action against manufacturer of personal care products, asserting claims under California's Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumers Legal Remedies Act (CLRA), alleging that phrase "Nature Fusion" on front label of shampoo and conditioner products misled consumers into believing the products were made with only natural ingredients. The United States District Court for the Northern District of California, Yvonne Gonzalez Rogers, J., 2021 WL 3886048, granted manufacturer's motion to dismiss for failure to state a claim. Consumer appealed.

**Holdings:** The Court of Appeals, Gould, Circuit Judge, held that:

[1] manufacturer was not precluded from relying on products' back label ingredient list to derive meaning of ambiguous phrase on front label;

[2] ambiguous phrase on front label of products was not misleading when read in conjunction with back label; and

[3] consumer survey results did not make plausible consumer's allegation that phrase on front label was misleading.

Affirmed.

Gould, Circuit Judge, joined by Berzon, Circuit Judge, filed concurring opinion.

West Headnotes (11)

[1] **Federal Courts** ⟶ Pleading
**Federal Courts** ⟶ Dismissal for failure to state a claim

Court of Appeals reviews de novo a district court's grant of a motion to dismiss for failure to state a claim, accepting all factual allegations in the complaint as true and construing them in the light most favorable to the nonmoving party. Fed. R. Civ. P. 12(b)(6).

[2] **Federal Civil Procedure** ⟶ Insufficiency in general

On a motion to dismiss for failure to state a claim, determining whether a complaint states a plausible claim for relief is a context-specific task requiring the reviewing court to draw on its judicial experience and common sense. Fed. R. Civ. P. 12(b)(6).

[3] **Federal Courts** ⟶ Theory and Grounds of Decision of Lower Court

If support exists in the record, a dismissal for failure to state a claim may be affirmed on any proper ground. Fed. R. Civ. P. 12(b)(6).

[4] **Antitrust and Trade Regulation** ⟶ Fraud; deceit; knowledge and intent
**Antitrust and Trade Regulation** ⟶ Advertising, marketing, and promotion

Claims under California's Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumers Legal Remedies Act (CLRA) are governed by the reasonable consumer test, under which a plaintiff is required to show that members of the public are likely to be deceived.

Cal. Bus. & Prof. Code §§ 17200, 17500; Cal. Civ. Code § 1770.

[5] **Antitrust and Trade Regulation** ⇨ Labeling and packaging

The reasonable consumer standard for claims under California's Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumers Legal Remedies Act (CLRA) requires more than a mere possibility that the label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner, rather, the standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled. Cal. Bus. & Prof. Code §§ 17200, 17500; Cal. Civ. Code § 1770.

[6] **Antitrust and Trade Regulation** ⇨ Labeling and packaging

Phrase "Nature Fusion," accompanied by an image of an avocado on a green leaf, on front label of shampoo and conditioner products was ambiguous as to whether products contained only natural ingredients, and thus manufacturer was not precluded from relying on the back label ingredient list to derive the meaning of the phrase, on motion to dismiss, in consumer's action against it for violation of California's Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumers Legal Remedies Act (CLRA); front label did not make any affirmative promise about what proportion of the ingredients were natural and could have meant any number of things about the products bearing some relationship to nature, as illustrated in consumer survey responses interpreting meaning of phrase. Cal. Bus. & Prof. Code §§ 17200, 17500; Cal. Civ. Code § 1770; Fed. R. Civ. P. 12(b)(6).

[7] **Antitrust and Trade Regulation** ⇨ Labeling and packaging

Whether a product's back label ingredients list can ameliorate any tendency of the front label to mislead in violation of California's False Advertising Law (FAL), Unfair Competition Law (UCL), and Consumers Legal Remedies Act (CLRA), depends on whether the back label ingredients list conflicts with or confirms a front label claim. Cal. Bus. & Prof. Code §§ 17200, 17500; Cal. Civ. Code § 1770.

[8] **Antitrust and Trade Regulation** ⇨ Labeling and packaging

If a defendant commits an act of deception on the front label of a product, in violation of California's False Advertising Law (FAL), Unfair Competition Law (UCL), and Consumers Legal Remedies Act (CLRA), then the presence of fine print revealing the truth is insufficient to dispel that deception. Cal. Bus. & Prof. Code §§ 17200, 17500; Cal. Civ. Code § 1770.

[9] **Antitrust and Trade Regulation** ⇨ Labeling and packaging

The front label of a product must be unambiguously deceptive for a defendant to be precluded from insisting that the back label of the product be considered together with the front label to defeat claims for violations of California's False Advertising Law (FAL), Unfair Competition Law (UCL), and Consumers Legal Remedies Act (CLRA). Cal. Bus. & Prof. Code §§ 17200, 17500; Cal. Civ. Code § 1770.

[10] **Antitrust and Trade Regulation** ⇨ Labeling and packaging

Ambiguous phrase "Nature Fusion," accompanied by an image of an avocado on a green leaf, on front label of shampoo and conditioner products, was not misleading, when read in conjunction with back label ingredient lists, and thus did not violate California's Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumers Legal Remedies Act (CLRA); upon seeing the back labels, it would have been clear to a reasonable consumer

that avocado oil was the natural ingredient emphasized in manufacturer's labeling and marketing, and the ingredient list clarified that the rest of the ingredients were artificial and contained both natural and synthetic ingredients. Cal. Bus. & Prof. Code §§ 17200, 17500; Cal. Civ. Code § 1770.

[11] **Antitrust and Trade Regulation** 🗝 Labeling and packaging

Consumer survey results showing that consumers were split on question of whether shampoo and conditioner products, with phrase "Nature Fusion" on front label, contained a mixture of natural and non-natural ingredients, did not make plausible consumer's allegation that the phrase "Nature Fusion" was misleading, as required to support claims against manufacturer for violation of California's Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumers Legal Remedies Act (CLRA); survey participants were only shown the front label, and, had the participants had access to the back label, they would have had an immediate answer to their question, as it revealed what ingredients were natural and what ingredients were not. Cal. Bus. & Prof. Code §§ 17200, 17500; Cal. Civ. Code § 1770.

Appeal from the United States District Court for the Northern District of California Yvonne Gonzalez Rogers, District Judge, Presiding, D.C. No. 4:20-cv-08164-YGR

**Attorneys and Law Firms**

George V. Granade (argued), Reese LLP, Los Angeles, California; Michael Reese, Reese LLP, New York, New York; for Plaintiff-Appellant.

Anne M. Voigts (argued), King & Spalding LLP, Palo Alto, California; John P. Hooper, King & Spalding LLP, New York, New York; George R. Morris, Deputy Attorney General; Office of the California Attorney General; San Francisco, California; for Defendant-Appellee.

Before: Ronald M. Gould, Marsha S. Berzon, and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Gould;

Concurrence by Judge Gould

**OPINION**

GOULD, Circuit Judge:

*2 Plaintiff-Appellant Sean McGinity sued Defendant-Appellee The Procter & Gamble Company ("P&G"), alleging that P&G violated California consumer protection laws by labeling some of its products with the words "Nature Fusion" in bold, capitalized text, with an image of an avocado on a green leaf. After the district court dismissed McGinity's second amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), McGinity appealed. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

**A. The products**

In June 2019, Sean McGinity purchased "Pantene Pro-V Nature Fusion" shampoo and conditioner at a Safeway grocery store in Santa Rosa, California. The shampoo and conditioner are products manufactured, marketed, sold, and labeled by P&G. The products' front labels display the words "Nature Fusion" in bold, capitalized letters, an image of an avocado on a green leaf, and an image of what appears to be a gold vitamin with the word "PRO-V" on it.

McGinity contends that P&G's packaging "represents that the Products are natural, when, in fact, they contain non-natural and synthetic ingredients, harsh and potentially harmful ingredients, and are substantially unnatural." McGinity has stated that he purchased the products, and paid a premium for them, because he wanted to buy "natural" personal care products. If McGinity had known when he purchased them that the products were not "from nature or otherwise natural," he would not have purchased the products or paid a price premium for the products.

McGinity's counsel commissioned an independent third party to conduct a survey of more than 400 consumers regarding their impressions of the products' front labels. Survey

participants did not have access to the products' back labels. Survey results showed that, when given pictures of the front of the products, 74.9% of consumers thought the label conveyed that the shampoo contained more natural than synthetic/artificial ingredients, and 77.4% of consumers thought the same about the conditioner. When asked about the phrase "Nature Fusion," 52.6% of consumers thought that the phrase "Nature Fusion" meant that the product did *not* contain synthetic ingredients; 49.1% of consumers thought that the phrase "Nature Fusion" meant that the product contained *only* natural ingredients; and 69.2% of consumers thought that the phrase "Nature Fusion" meant that the product contained *both* natural and synthetic ingredients.

### B. Procedural history

McGinity asserted claims under California's Unfair Competition Law ("UCL"), California's False Advertising Law ("FAL"), and California's Consumers Legal Remedies Act ("CLRA"). P&G moved to dismiss McGinity's original complaint under Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion to dismiss with leave to amend. McGinity later filed his amended complaint, which P&G again moved to dismiss under Rule 12(b)(6). The district court stated that McGinity's original and amended complaints failed for the same reason: the complaints did not "allege sufficient facts to show that a reasonable consumer would be deceived by P&G's labeling." The district court dismissed McGinity's second amended complaint, and he appealed.

## II. STANDARD OF REVIEW

[1] [2] [3] "We review *de novo* the district court's grant of a motion to dismiss under Rule 12(b)(6), accepting all factual allegations in the complaint as true and construing them in the light most favorable to the nonmoving party." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016) (quoting *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012)). Determining whether a complaint states a plausible claim for relief is a "context-specific task," requiring "the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). If support exists in the record, a dismissal may be affirmed on any proper ground. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *Papa v. United States*, 281 F.3d 1004, 1009 (9th Cir. 2002).

## III. DISCUSSION

### A. Deceptive or misleading practice

*3 [4] [5] Appellant's claims under the UCL, FAL, and CLRA are governed by the "reasonable consumer" standard. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). That standard requires that Appellants "show that members of the public are likely to be deceived." *Id.* (internal quotation marks and citation omitted). The California Supreme Court has recognized that these statutes prohibit explicitly false advertising and advertising that is "either actually misleading[,] or which has a capacity, likelihood[,] or tendency to deceive or confuse the public." *Id.* (quoting *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951, 119 Cal.Rptr.2d 296, 45 P.3d 243 (2002)). The reasonable consumer standard requires more than a mere possibility that the label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner*, 838 F.3d at 965 (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508, 129 Cal.Rptr.2d 486 (2003)). Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (citation omitted). The touchstone under the "reasonable consumer" test is whether the product labeling and ads promoting the products have a meaningful capacity to deceive consumers.

In *Moore v. Trader Joe's Co.*, we held that the label "100% New Zealand Manuka Honey" was not likely to deceive a reasonable consumer into believing that the product contained only honey from the Manuka flower. 4 F.4th 874, 876–77 (9th Cir. 2021). We reasoned that there was "some ambiguity as to what 100% mean[t] in the phrase, '100% New Zealand Manuka Honey' ": it could mean, as examples, that the Manuka flower was the only source of the honey, that the Manuka flower was the primary source of the honey, or that 100% of the honey was from New Zealand. *Id.* at 882. Because of this ambiguity, we explained that "reasonable consumers would necessarily require more information before they could reasonably conclude Trader Joe's label promised a honey that was 100% derived from a single, floral source." *Id.* This additional information could be something on the rest of the packaging (e.g., the ingredient list), the relative price of the product, or in the context of honey, general knowledge about how honey is made. *See id.* at 882–85. While the reasonable consumer is not expected to be an expert in honey production, the reasonable

consumer should know that beekeepers cannot force bees to gather honey from only certain types of flowers. *Id.* at 883. We agreed with the district court's conclusion that other available information about Trader Joe's Manuka Honey would dissuade a reasonable consumer from thinking that the product was derived only from Manuka flower nectar. *Id.* at 882–883.

 **[6]**  Here, like in *Trader Joe's*, there is some ambiguity as to what "Nature Fusion" means in the context of its packaging. Appellants argue that the phrase could be interpreted to mean that the product contains a mixture of natural ingredients, while Appellees argue that the phrase should be interpreted to mean that the product contains a mixture of both natural and synthetic ingredients. The ambiguity of the phrase is further shown by the nearly 50/50 split in survey responses interpreting whether the phrase means that the products are all-natural and lack synthetic ingredients.[1] At the same time, nearly 70% of survey respondents said yes when asked whether the phrase meant that the products contain both natural *and* synthetic ingredients. This ambiguity means that, like in *Trader Joe's*, we must consider what additional information other than the front label was available to consumers of the P&G products. *See id.* McGinity contends that circuit precedent precludes P&G from relying on the back ingredient list to derive the meaning of "Nature Fusion." We disagree.

 ***4** **[7]**  **[8]**  **[9]** Whether a back label ingredients list "can ameliorate any tendency of [a] label to mislead" depends on whether the "back label ingredients list ... conflict[s] with" or "confirm[s]" a front label claim. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (citation omitted). In other words, if a defendant *does* commit an act of deception on the front of a product, then "the presence of fine print revealing the truth is insufficient to dispel that deception." *See Ebner*, 838 F.3d at 966. However, the front label must be unambiguously deceptive for a defendant to be precluded from insisting that the back label be considered together with the front label. *See id.* (considering the rest of the product's packaging when there was "no deceptive act to be dispelled" on the front).

In *Williams v. Gerber Products*, we held that the back ingredient label on Gerber's "Fruit Juice Snacks" could not cure the misleading nature of the front and side of the package. 552 F.3d at 939. The front label of Gerber's fruit juice snacks contained the phrase "fruit juice snacks," pictures of fruits, and the side label stated that the product was made "with real fruit juice and other all natural ingredients." *Id.* at 936. However, when consumers turned the package over, they would discover that the product did not contain juice from any of the fruits pictured on the front and that the first two ingredients listed, showing their prominent role in the manufacturing of the product, were corn syrup and sugar. *Id.* We explained that the purpose of the ingredients list should be to confirm the representations on the front or other parts of a package. *Id.* at 939–40. We stated: "We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that *confirms* other representations on the packaging." *Id.* (emphasis added).

 **[10]**  Here, the front label containing the words "Nature Fusion" is not misleading—rather, it is ambiguous.[2] Unlike a label declaring that a product is "100% natural" or "all natural," the front "Nature Fusion" label does not promise that the product is wholly natural. Although the front label represents that something about the product bears a relationship to nature, the front label does not make any affirmative promise about what proportion of the ingredients are natural. Instead, as the parties point out, "Nature Fusion" could mean any of a number of things: that the products are made with a mixture of natural and synthetic ingredients, that the products are made with a mixture of different natural ingredients, or something else entirely.

We hold that when, as here, a front label is ambiguous, the ambiguity can be resolved by reference to the back label. In addition to the ingredient lists, the back labels of the Nature Fusion shampoo and conditioner contain the phrases "Smoothness Inspired by Nature" and "NatureFusion® Smoothing System With Avocado Oil." Upon seeing the back labels, it would be clear to a reasonable consumer that the avocado oil is the natural ingredient emphasized in P&G's labeling and marketing. The ingredients list, which McGinity alleges includes many ingredients that are synthetic and that a reasonable consumer would not think are natural, clarifies that the rest of the ingredients are artificial and that the products thus contain both natural and synthetic ingredients.

**B. The consumer survey**

 ***5** **[11]** McGinity relies heavily on the results of the consumer survey that his counsel had commissioned from a

third party. Although we accept the allegations concerning the survey as true at this stage of litigation, the survey is not particularly instructive or helpful to us in deciding this case.

The consumer survey in *Becerra v. Dr Pepper/Seven Up, Inc.* was similarly unhelpful. 945 F.3d 1225 (9th Cir. 2019). In *Becerra*, the survey concerned consumers' understanding of the word "diet" in the context of Diet Dr. Pepper soda products. *Id.* at 1230. Becerra alleged that the survey in that case showed that "consumers expect a diet soft drink to either help them lose weight, or help maintain or not affect their weight." *Id.* at 1230. However, we agreed with the district court that it was difficult to tell what questions were asked in the survey. *Id.* at 1230–31. Because the survey did not adequately address the crux of the issue (whether the reasonable consumer would understand the word "diet" in the context of Diet Dr. Pepper as a relative claim about the calorie or sugar content), we held that the survey did not "make plausible the allegation that reasonable consumers are misled by the term 'diet.' " *Id.* at 1231.

Here, the survey participants did not have access to the back label of the products. This omission to a degree undermines the extent to which we can fairly rely on the survey results as being instructive of how the "reasonable consumer" understands the phrase "Nature Fusion" in the context of the products. As in *Becerra*, the survey here does not adequately address the primary question in this case.

Rather than demonstrating that the phrase "Nature Fusion" is misleading, the survey results confirm that it is ambiguous. Looking only at the front label, survey respondents were split nearly 50/50 on the question of whether the products contain a mixture of natural and non-natural ingredients, or if they instead contain all or substantially all natural ingredients. Given that ambiguity, the survey is not informative as to whether the labeling of the products is misleading as a whole. Had the survey participants had access to the products' back labels, they would have had an immediate answer to this question—they could see that the products contain avocado oil, a natural ingredient, as well as many synthetic ingredients. Although a back label cannot contradict deceptive statements made on the front label, the back label can be used to interpret what is conveyed by the labeling when the front label is ambiguous, as here. With the entire product in hand, we conclude, no reasonable consumer would think that the products are either completely or substantially natural. The survey results do not make plausible the allegation that the phrase "Nature Fusion" is misleading.

As shown by both *Becerra* and this case, it is important that potential or current litigants draft questions for consumer surveys with utmost care. Although the particular survey proved noninformative in the context of this case and the results of the survey, consumer surveys may well be relevant and helpful in other cases. "Consumer surveys offer opportunities for the court ... to see current consumer understandings of [ ] products as well as identify points of ambiguity, confusion, or blatant falsity amongst the labeling." Jessica Guarino et. al., *What the Judge Ate for Breakfast: Reasonable Consumer Challenges in Misleading Food Labeling Claims*, 35 Loy. Consumer L. Rev. 82, 135 (2023).

## IV. CONCLUSION

*6 We affirm the decision of the district court dismissing McGinity's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

**AFFIRMED.**

GOULD, Circuit Judge, joined by BERZON, Circuit Judge, concurring:

Although we hold that McGinity has not successfully shown that P&G's "Nature Fusion" labeling is deceptive as a matter of law, I write separately to express my view that P&G's labeling nonetheless resembles a concerning practice known as "greenwashing." Greenwashing refers to "a set of deceptive marketing practices in which an entity publicly misrepresents or exaggerates the positive environmental impact or attributes of a product[.]" Amanda Shanor & Sarah E. Light, *Greenwashing and the First Amendment*, 122 Colum. L. Rev. 2033, 2037 (2022); *see also id.* at 2056–57. The practice of greenwashing has resulted from the increasing number of American consumers who want to buy environmentally friendly, or "green," products. *See* 16 C.F.R. § 260.1 ("the Green Guides").

Greenwashing is not limited to environmental effects and is also used to describe the misleading or false labeling of a wide range of consumer products.[1] For example, the practice of greenwashing also affects "the way consumers buy cosmetic and personal products." Alexa Riccolo, *The Lack of Regulation in Preventing Greenwashing of Cosmetics in the U.S.*, 47 J. Legis. 120, 122 (2021). In the context of

cosmetics and personal care products (e.g., shampoos and conditioners), the term is used to describe products that have "natural" labeling "but actually contain chemicals[.]" *Id.*

The Federal Trade Commission issued the Green Guides to help companies avoid making misleading environmental claims. The Green Guides discourage marketers from making broad environmental benefit claims like "green" or "eco-friendly" because they are "difficult to interpret and likely convey a wide range of meanings." *See* 16 C.F.R. § 260.4. The Green Guides also state that companies "should not imply that any specific benefit is significant if it is, in fact, negligible." 16 C.F.R. § 260.4(c). While the Green Guides do not explicitly comment on use of the words "nature" or "natural," they give general principles that all marketers can use to avoid deceiving consumers unintentionally or from mere negligence. *See, e.g.*, 16 C.F.R. §§ 260.9 (addressing claims that a product is "free of" specified substances or chemicals), 260.10 (addressing claims that a product is "non-toxic").

**\*7** Here, although there is only one natural ingredient in the products, the word "Nature" is in bold, capitalized text on the front labels and is one of the largest words on the bottles, second only to the brand name, "Pantene." As a consumer hoping to purchase natural personal care products, McGinity was drawn to the emphasis on "Nature" and thought that the labeling meant that the products were "of, by, and from 'Nature.'" McGinity alleges that "Nature Fusion" conveyed to him that the products were made of predominantly natural ingredients when they were, in fact, made of almost entirely synthetic ingredients. The phrase "Nature Fusion" may be more ambiguous and less deceptive than "green" or "eco-friendly," but I still note how the use of such a phrase sounds alarm bells similar to those sounded in the Green Guides.

**All Citations**

--- F.4th ----, 2023 WL 3911531

---

Footnotes

1   According to the survey, 52.6% of consumers thought that the phrase "Nature Fusion" meant that the product did *not* contain synthetic ingredients; 49.1% of consumers thought that the phrase "Nature Fusion" meant that the product contained *only* natural ingredients.

2   The image of the avocado on a green leaf is truthful because the products do contain avocado oil. The back label ingredient list thus "confirms" the avocado image on the front label. *See Williams*, 552 F.3d at 939-40.

1   The far-reach of greenwashing is well-illustrated in "The Six Sins of Greenwashing," an influential 2007 study published by TerraChoice Environmental Marketing. In this study, TerraChoice sent research teams to "big box" stores to record every product-based human health or environmental claim they observed. TerraChoice identified over 50 product categories in which false or misleading claims were found, including everything from televisions, to household cleaning products, to personal care products such as shampoo and conditioner. TerraChoice, *The "Six Sins of Greenwashing": A Study of Environmental Claims in North American Consumer Markets* 9 (2007), https://perma.cc/7BTD-Z2U7.

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.