UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN COLLYER,<br><br>    Plaintiff,<br><br>v.<br><br>CATALINA SNACKS INC.,<br><br>    Defendant. | Case No. 23-cv-00296-AMO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 16 |

Defendant Catalina Snacks, Inc.'s motion to dismiss was heard before this Court on September 14, 2023. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby GRANTS in part and DENIES in part Defendant's motion, for the following reasons.

## BACKGROUND[1]

This is a putative consumer fraud class action. Defendant Catalina Snacks, Inc. ("Catalina") sells Catalina Crunch Keto Friendly Cereals in numerous varieties, including Chocolate Banana, Honey Graham, Mint Chocolate, and Apple Cider Donut. Compl. ¶ 2. Plaintiff Karen Collyer purchased the Chocolate Banana and Honey Graham flavors of the Catalina Crunch Keto Friendly Cereals from grocery stores in Monterey County in 2022. Compl. ¶ 49. Collyer complains that the packaging of the four cereals deceive and mislead reasonable consumers because the cereals do not contain a characterizing ingredient pictured and referred to on the principal display panel. Compl. ¶ 40. Reasonable consumers are damaged by paying a

---

[1] As it must when considering a motion to dismiss, the Court accepts as true the Complaint's (ECF 1) allegations of material fact. *See Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 938 (9th Cir. 2023).

price premium for the cereal that lacks the healthful characterizing ingredients.  Compl. ¶¶ 38-41.

The front and back sides of the Chocolate Banana packaging are depicted below:




Compl. ¶¶ 31, 33.  Collyer complains that the product does not include real bananas; rather, the banana taste appears to come from "natural flavors."  *Id.*

The front and back sides of the Apple Cider Donut product are depicted below:



Compl. ¶ 34.  Collyer complains that the Apple Cider Donut variety contains no apple or apple cider; rather, the apple cider taste appears to come from "natural flavors."  *Id.*

2

1      The front and back sides of the Mint Chocolate product are depicted below:



Compl. ¶ 35.  Collyer complains that the Mint Chocolate variety contains no mint; rather, the mint taste appears to come from "natural flavors."  *Id.*

The front and back sides of the Honey Graham product are depicted below:



Compl. ¶ 36.  Collyer complains that the Honey Graham variety contains no honey; rather, the honey taste appears to come from "natural flavors."  *Id.*

3

On behalf of herself and a proposed class of California consumers, Collyer asserts the following claims:

1. violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.;
2. violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.;
3. violation of California's False Advertising Law ("FAL"), Cal Bus. & Prof. Code §§ 17500, et seq.; and
4. breach of implied warranty.

She simultaneously seeks damages and equitable restitution. Compl. ¶¶ 71, 76.

## DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(1), Catalina challenges Collyer's standing to bring claims related to products she never purchased: the Apple Cider Donut or Mint Chocolate flavors of the Keto Friendly Cereals. Additionally, Catalina moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Further, Catalina additionally seeks dismissal of Plaintiff's claim for punitive damages, which Collyer does not oppose. *See* ECF 20 at 8 n.1. Because standing is a threshold issue, the Court addresses it first. *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

### A.   Rule 12(b)(1) – Article III Standing

Collyer seeks to represent a class of consumers who purchased any of the four flavors of the Catalina Crunch cereal, but Collyer only purchased two of the four flavors: Chocolate Banana and Honey Graham. Compl. ¶ 49. Catalina argues that Collyer lacks standing to bring claims as to the products she did not purchase, the Apple Cider Donut and Mint Chocolate cereals.

An assertion that the requirements of standing are not satisfied is properly raised in a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(1) because standing relates to a federal court's subject matter jurisdiction. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *see also Cetacean Community v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004) ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court

4

therefore lacks subject matter jurisdiction over the suit."). To have standing under Article III of the Constitution, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Article III "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). In the Ninth Circuit, "[t]here is no controlling authority on whether [p]laintiffs have standing for products they did not purchase." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012). Several courts in this district have held that a named plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase "'so long as the products and alleged misrepresentations are *substantially similar*.'" *Yamasaki v. Zicam LLC*, No. 21-cv-02596-HSG, 2021 WL 4951435, at *2 (N.D. Cal. Oct. 25, 2021) (emphasis added) (quoting *Miller*, 912 F. Supp. 2d at 869). "Courts have found substantial similarity for purposes of standing where (1) the products are physically similar; (2) the differences between the products are immaterial because the legal claim and injury to the customer are the same; and (3) both the products and the legal claims and injury are similar." *Yamasaki*, 2021 WL 4951435, at *2 (citation omitted).

Here, the products pass the three-part test for "substantially similar." First, the products are physically similar, with the pieces of cereal depicted on the front of the packages being small, flat, slightly concave squares, and differentiated merely by their color. Compl. ¶¶ 31, 33-36. The Court agrees with Collyer that the products are nearly identical in their ingredient lists. *Id.* And importantly, none of these ingredient lists include the showcased flavors on the front of the packages, with such flavors apparently included among the non-specific "natural flavors" in the ingredient lists. *Id.* This satisfies the second prong because the distinction between the showcased flavors and their absence in the ingredient lists appears to be the alleged defect that gives rise to Collyer's fraud-based claims. Finally, "both the products and the legal claims and injury are similar" where Collyer alleges that the same absence of ingredients presented on the front of the packaging gives rise to the same consumer fraud claims. *See Yamasaki*, 2021 WL 4951435, at *2 (citation omitted). Therefore, the Court concludes that Collyer has standing to assert claims

1  related to the two cereal varieties she did not purchase because they are substantially similar to the
2  ones she did purchase.

### B.      Rule 12(b)(6) – Failure to State a Claim

Catalina also moves to dismiss the Complaint for failure to state a claim. Catalina argues that: (1) Collyer has failed to state a claim under the "reasonable consumer" standard; (2) the California Unfair Competition Law, particularly the "unlawful" prong, is preempted; (3) Collyer has not stated a claim for breach of the implied warranty of merchantability; and (4) Collyer may not pursue equitable relief. After setting forth the relevant legal standard, the Court addresses in turn the parties' arguments.

#### 1.      Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, unsupported by actual factual allegations, need not be accepted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679. If dismissal is warranted, it is generally without prejudice, unless it is clear that the complaint cannot be saved by any amendment. *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005).

Because Plaintiff's claims sound in fraud, her complaint must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake. To satisfy this standard, the "complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotation marks omitted).

### 2. Sufficiency of Allegations Under the UCL, FAL, and CLRA ("Reasonable Consumer" Standard)

Plaintiff's first three causes of action are brought under California statutes: the Unfair Competition Law ("UCL"), the False Advertising Law ("FAL"), and the Consumer Legal Remedies Act ("CLRA"). Cal. Bus. & Prof. Code § 17200 (UCL), Cal. Bus. & Prof. Code § 17500 (FAL); Cal. Civ. Code § 1770 (CRLA). Catalina argues that Collyer fails to state a claim under the CLRA, UCL, and FAL because she fails to allege facts establishing that the challenged representations on the product label are likely to deceive a reasonable consumer.

"Under the consumer protection laws of California[,] . . . claims based on deceptive or misleading marketing must demonstrate that a 'reasonable consumer' is likely to be misled by the representation." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021); *see Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003). "Under the reasonable consumer standard, [plaintiffs] must show that members of the public are likely to be deceived." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Id.* at 938 (internal quotation marks omitted) (quoting *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002)). The reasonable consumer test requires more than a mere possibility that defendant's product "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105

Cal. App. 4th 496, 508 (2003).  Rather, the test requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*; *see also Moore*, 4 F.4th at 881.

Generally, "whether a reasonable consumer would be deceived . . . [is] a question of fact not amenable to determination on a motion to dismiss." *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014); *see Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015).  "However, in rare situations a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." *Ham*, 70 F. Supp. 3d at 1193.

Collyer relies heavily on the Ninth Circuit's opinion in *Williams v. Gerber Products Co.* to argue that the Complaint satisfies the reasonable consumer test.  In *Williams*, the court determined that a reasonable consumer could be deceived by images on a fruit snack label depicting a number of different fruits, "potentially suggesting (falsely) that those fruits or their juices are contained in the product." *Williams*, 552 F.3d at 939.  The Ninth Circuit rejected the argument that a misrepresentation on the front of the package could be cured by a disclaimer on the back of the package, instead concluding "reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the package." *Id.* at 939-40.

Collyer asserts that the characterizing flavors of the four cereals and their primary display panels mislead consumers who would otherwise not pay a price premium for products lacking bananas, mint, honey, and apples.  *See* Compl. ¶¶ 31-41.  However, Collyer acknowledges in her Opposition brief that she does not claim to have believed the cereals contained whole banana, apple, mint, or honey.  ECF 20 at 18 n.3.  This distinguishes the cold cereal at issue here from the fruit snacks in *Williams* because Collyer acknowledges that a reasonable consumer would not interpret the packaging to suggest that the products included, for instance, dried banana or mint.  The product labels here are further distinguishable given the full context of the labels – though they include images of the characterizing flavors, immediately adjacent to those images are the words "serving suggestion."  Compl. ¶¶ 31, 33, 34, 35.  Reasonable consumers are aware that cereals depict images of fresh fruit as a serving suggestion, and reasonable consumers do not

8

invariably expect to receive such fruit in their cereal – particularly when the contents of that cereal are prominently and adequately described in the ingredient list.

Though a reasonable consumer is not expected to look to the back of a product label to dispel a misleading claim on the front of a product label, *see Williams*, 552 F.3d at 939, Collyer fails to show any deceiving statements. Collyer does not argue that the product labels misrepresent the ingredients, sugar, or carbohydrates. The Catalina Crunch product labels contain no assertion that the products are "made with" or "made from" any of the characterizing flavors. Nothing on the product labels state or imply that the cereal flavors are derived entirely or predominantly from banana, apple, mint, or honey. Thus, this is not a case in which Defendant misled consumers and then relied on a small-print "ingredient list" on the alternate side of the packaging in an attempt "to correct those misinterpretations and provide a shield for liability for the deception." *Cf. Williams*, 552 F.2d at 939. Where "there is no deceptive act to be dispelled and no other statement or other depiction that could mislead the reasonable consumer, then it is not plausible that a significant portion of the general consuming public could be deceived." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016) (citing *Williams*, 552 F.3d at 936) (internal quotation mark omitted); *see also Truxel v. General Mills Sales, Inc.*, No. C 16-04957 JSW, 2019 WL 3940956, at *1, 4 (N.D. Cal. Aug. 13, 2019) (finding no deception where "the actual ingredients were fully disclosed and it was up to the Plaintiffs, as reasonable consumers, to come to their own conclusions about whether or not the sugar content was healthy for them."). A reasonable consumer would not be deceived by the representations on these cereal product labels.

Collyer's interpretation of the product labels as misleading for omitting the characterizing flavors of banana, apple, mint, or honey is further rendered implausible by additional statements on the packaging describing the cereal as keto-friendly. The context in which Catalina markets its products is relevant. *See Moore*, 4 F.4th at 884 (considering contextual inferences from the product (Manuka Honey) in concluding that plaintiffs' interpretation of a label was unreasonable or fanciful). Here, the front labels on the Catalina Crunch products state these are *keto*-friendly cereals containing 0g sugar, which reasonable consumers shopping for the cereals would understand to specifically exclude banana, apple, and honey, all of which contain sugar. Like the

9

1    consumers paying a price premium for Manuka honey in *Moore*, consumers purchasing a "niche,
2    specialty product" like keto-friendly cereal at $7 to $10 per nine-ounce bag "are undoubtedly more
3    likely to exhibit a higher standard of care" in their review of the product label and the ingredient
4    lists. *Moore*, 4 F.4th at 884; Compl. ¶ 27. Collyer fails to plausibly allege that the product labels
5    at issue are likely to deceive reasonable consumers.

6    Plaintiff's California statutory claims all fail on this basis and must be DISMISSED.
7    However, in light of the Ninth Circuit's authority discouraging dismissal of consumer deception
8    claims at the pleadings stage, the Court finds it appropriate to grant leave to amend these claims.
9    *See Williams*, 552 F.3d at 939 (emphasizing that it is a "rare situation in which granting a motion
10   to dismiss is appropriate" for these kinds of claims).

### 3.     Preemption of UCL "Unlawful" Claim

Collyer brings her cause of action for violation of California's UCL under all three prongs, alleging that Catalina's product labeling practices are simultaneously (1) unlawful, (2) fraudulent, and (3) unfair. Compl. ¶¶ 66-69. Catalina contests as preempted Collyer's argument that the product labels are unlawful because they violate the Food, Drug, and Cosmetic Act ("FDCA") as incorporated in California's Sherman Law. Collyer counters that her UCL "unlawful" claim is premised on violation of the Sherman Law, which is not preempted because it expressly incorporates and effectively parallels the labeling requirements of the FDCA.

"Express preemption exists when a statute explicitly addresses preemption." *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015). Conflict preemption occurs when it would be "impossible for a private party to comply with both state and federal requirements," *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990), or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

Defendants in food labeling cases frequently assert that claims brought pursuant to the UCL, CLRA, and FAL are preempted by the FDCA – even where state law imposes identical requirements as the FDCA. Catalina follows that pattern here and argues that Plaintiff's UCL "unlawful" prong claim is preempted by the FDCA as amended by the Nutrition Labeling and

Education Act ("NLEA"). "The [FDCA] . . . forbids the misbranding of food, including by means of false or misleading labeling." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 106 (2014) (citing §§ 301, 403, 52 Stat. 1042, 1047, as amended, 21 U.S.C. §§ 331, 343). The NLEA establishes national uniformity in nutrition labeling, and it expressly preempts state law that is inconsistent with its requirements. 21 U.S.C. § 343-1(a). In addition, there is no private right of action under the FDCA. 21 U.S.C. § 337(a).

California expressly incorporates the provisions of the FDCA in the state's Sherman Law. *See* Cal. Health & Safety Code § 110100. State laws are not preempted if they "are equal to, or substantially identical to, requirements imposed by or under" federal law. 21 C.F.R. § 808.1(d)(2). Accordingly, the NLEA "has been repeatedly interpreted not to preempt requirements imposed by state law that effectively parallel or mirror the relevant sections of the NLEA." *Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2013 WL 675929, at *3 (N.D. Cal. Feb. 25, 2013) (collecting cases); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 573 (N.D. Cal. 2013) ("Courts in this district have repeatedly refused to find preemption 'where a requirement imposed by state law effectively parallels or mirrors the relevant sections of the FDCA.'") (citations and internal punctuation omitted). A district court split has developed, however, over whether plaintiffs can state a UCL claim by relying on an averred violation of California's Sherman Law. *See Effinger v. Ancient Organics LLC*, No. 22-CV-03596-RS, 2023 WL 2214168, at *3-5 (N.D. Cal. Feb. 24, 2023) (discussing split).

Catalina argues that Collyer's UCL unlawful claim is impliedly preempted under *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 353 (2001), as explained in *Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc.*, 48 F.4th 1040, 1050 (9th Cir. 2022), and *Chong v. Kind LLC*, 585 F. Supp. 3d 1215 (N.D. Cal. 2022). In *Nexus*, the plaintiff brought a state law claim that the defendant, a competitor, violated the FDCA by producing and marketing compounded pharmaceuticals that were "essentially a copy" of an FDA-approved pharmaceutical. *Nexus*, 48 F.4th at 1044. The Ninth Circuit, relying in part on *Buckman*, concluded that state law false advertising claims should be precluded when they "would require litigation of the alleged underlying FDCA violation in a circumstance where the FDA has

1    not itself concluded that there was a violation." *Id.* at 1048 (quoting *PhotoMedex, Inc. v. Irwin*,
2    601 F.3d 919, 924 (9th Cir. 2010)).
3          In *Chong v. KIND, LLC*, 585 F. Supp. 3d 1215 (N.D. Cal. 2022), the court determined that
4    *Buckman* preemption applied to bar a UCL claim brought (for a violation of the Sherman Law) for
5    similar mislabeling allegations. As explained, the FDCA "does preempt state-law claims that
6    ultimately are dependent on the existence of violations of federal law." 585 F. Supp. 3d at 1219
7    (citation omitted). It additionally concluded that the Sherman Law's adoption of the FDCA left it
8    preempted because the FDCA impliedly preempts state law claims that originate from federal law.
9    *Id.* at 1219-20.
10         Here, Collyer disclaims violation of the FDCA, advancing her UCL unlawful claim instead
11   on violation of the Sherman Law, which incorporates the FDCA, on the basis that Defendant's
12   products fail to disclose that they are flavored. Collyer alleges that Catalina's product
13   representations are misleading under California law, not that the product representations are
14   misleading under FDA regulations. But while the FDCA does not preempt preexisting state
15   common-law duties that "parallel federal requirements," it does preempt state-law claims that
16   ultimately are dependent on the existence of violations of federal law. *Stengel v. Medtronic, Inc.*,
17   704 F.3d 1224, 1228, 1235 (9th Cir. 2013). That is the case here. Collyer's claim that the cereal
18   labels at issue are unlawful is based on violation of the Sherman Law, which expressly
19   incorporates the FDCA and regulations as state law. *See* Cal. Health & Safety Code § 110100(a).
20   Accordingly, to the extent Collyer's claims rely on violation of the FDCA, they are preempted.
21   *See Stengel*, 704 F.3d at 1230 (finding that FDCA impliedly preempts state law claim that
22   "originates from, is governed by, and terminates according to federal law" (quotation marks
23   omitted)). The unlawful prong portion of Collyer's UCL claim, most notably included in
24   paragraph 67 of the Complaint, is therefore DISMISSED with prejudice.

25   **4.     Breach of Implied Warranty of Merchantability**

26         Collyer alleges that Defendant's products do not conform to the promises or affirmation of
27   fact advertised on the label. Defendant's product label representations created implied warranties,
28   Collyer contends, that the product contained premium ingredients such as banana, apple or apple

12

cider, mint, or honey. Compl. ¶ 88.

Catalina argues that this claim fails because there is no privity between it and Collyer. Collyer counters that privity between the parties is not required because California law exempts foodstuffs from the privity requirement. *See Mexicali Rose v. Super. Ct.*, 1 Cal. 4th 617, 621 (1992) ("foodstuffs do not fall within the general rule of privity between the manufacturer and the consumer, even though the purchase is made through a retailer") (citation omitted). Catalina responds that privity is required, as the "foodstuffs" exception applies only to claims for breach of the implied warranty of fitness for human consumption, which Collyer does not assert here.

Under California law, the implied warranty can be violated if (1) the product is not "fit for the ordinary purposes for which such good [is] used," or (2) does not "[c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2); *Hauter v. Zogarts*, 14 Cal. 3d 104, 118 (1975). Further, a plaintiff "must stand in vertical contractual privity with the defendant." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). However, for implied warranty claims, an exception to the privity requirement has been made "in cases involving foodstuffs, where it is held that an implied warranty of fitness for human consumptions runs from the manufacturer to the ultimate consumer." *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695 (1954).

Here, Catalina Crunch cereals are intended for human consumption. Collyer does not claim that the cereals were not fit for human consumption, only that the cereals did not include all the ingredients she expected. This does not implicate the foodstuffs exemption to the requirement of privity between purchaser and producer. Therefore, the claim for breach of the implied warranty of merchantability cannot stand. Amendment cannot cure this defect, and the cause of action is DISMISSED with prejudice.

### 5. Equitable Relief

Citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), Catalina argues that Collyer's claims for equitable relief must be dismissed pursuant to federal common law because equitable claims cannot stand where a plaintiff has an adequate remedy at law. In *Sonner*, the panel considered whether the district court properly dismissed a plaintiff's equitable claim for

restitution following the voluntarily dismissal of her sole legal claim on the eve of trial. *Id.* at 837. The Ninth Circuit clarified that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." 971 F.3d at 844. The court ultimately held that the plaintiff failed to show that she lacked an adequate legal remedy because, in large part, she conceded that she sought "the same sum in equitable restitution . . . as she requested in damages to compensate her for the same past harm." *Id.*

This case, however, is at the pleading stage, and the Court is persuaded by decisions in this district which allow the pursuit of alternative remedies at the pleadings stage. *See, e.g.*, *Harris v. McDonald's Corp.*, No. 20-cv-06533-RS, 2021 WL 2172833, at *3 (N.D. Cal. Mar. 24, 2021) ("[Defendant's] argument that *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) requires rejection of the equitable claims at the pleading stage is not persuasive."); *Snarr v. Cento Fine Foods Inc.*, No. 19-cv-02627-HSG, 2019 WL 7050149, at *5 n.32 (N.D. Cal. Dec. 23, 2019) ("The Court further rejects Defendant's argument that Plaintiffs may not seek equitable remedies given that they have alleged claims for damages under the CLRA and for breach of warranty."); *Madani v. Volkswagon Group of America, Inc.*, No. 17-cv-07287-HSG, 2019 WL 3753433, at *9 (N.D. Cal. Aug. 8, 2019) ("[T]he Court is persuaded that, at the pleading stage, theories of equitable remedies are not barred by a plaintiff adequately pleading theories supporting monetary relief."); *Luong v. Subaru of America, Inc.*, No. 17-cv-03160-YGR, 2018 WL 2047646, at *7 (N.D. Cal. May 2, 2018) ("The availability of monetary damages does not preclude a claim for equitable relief under the UCL and CLRA based upon the same conduct."); *Aberin v. Am. Honda Motor Co., Inc.*, No. 16-cv-04384-JST, 2018 WL 1473085, at *9 (N.D. Cal. Mar. 26, 2018) ("This Court joins the many other courts, however, that have reached the opposite conclusion, finding no bar to the pursuit of alternative remedies at the pleadings stage."); *Adkins v. Comcast Corp.*, No. 16-cv-05969-VC, 2017 WL 3491973, at *3 (N.D. Cal. Aug. 1, 2017) ("[T]his Court is aware of no basis in California or federal law for prohibiting the plaintiffs from pursuing their equitable claims in the alternative to legal remedies at the pleadings stage."). Accordingly, Defendant's Motion to Dismiss is DENIED on this basis.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part Catalina's Motion to Dismiss. Collyer's claims under the reasonable consumer standard of the UCL, FAL, and CLRA are all DISMISSED with leave to amend except for the preempted portion of the UCL unlawful prong claim that relies on the Sherman Law, which is DISMISSED with prejudice. Collyer's cause of action for breach of implied warranty of merchantability is DISMISSED with prejudice. Collyer's amended pleading, if any, shall be filed no later than February 22, 2024. No additional parties or claims may be added without leave of court or stipulation of Defendant.

**IT IS SO ORDERED.**

Dated: January 18, 2024

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**